[Docket Item 10]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEXTER LACOUNT<br><br>                Plaintiff,<br>     v.<br><br>SOUTHPORT ENTERPRISES<br><br>                Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 05-5761 (JBS)<br><br>**<u>OPINION</u>** |

APPEARANCES:
Stanley B. Gruber, Esq.
FREEDMAN AND LORRY, P.C.
1601 Market Street
2nd Floor
Philadelphia, PA 19103
     Attorney for Plaintiff

Kevin J. Thornton, Esq.
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM
1125 Atlantic Avenue
Atlantic City, NJ 08401
     Attorney for Defendant

**Simandle, District Judge**:

**I.   INTRODUCTION**

     This matter comes before the Court on the motion for summary judgment [Docket Item 10] by Defendant Southport Enterprises, which contends that Plaintiff Dexter LaCount does not qualify as a "seaman" under the Jones Act[1], and is therefore not entitled to recovery for personal injury he suffered while working on Defendant's "vessel."  Southport also contends that it is not

---

     [1] At the time of the incident, the Jones Act was codified at 46 App. U.S.C. § 688.  Since October 6, 2006, however, the Act has been moved to 46 U.S.C. § 30104.

liable in negligence as the vessel owner under Plaintiff's alternate theory of liability arising under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).  The Court heard oral argument on May 30, 2007 and now, for the reasons explained below, the Court shall deny summary judgment on both counts.

**II.   BACKGROUND**

   **A.   Facts**[2]

Plaintiff was injured while employed by Defendant Southport and working on a barge that Southport leased.  The barge had no engine but Southport also leased a pushboat that moved the barge from place to place.  Plaintiff never operated the pushboat and never cleaned or repaired the barge.

Southport did marine construction work and used the barge as a work platform and to transport its equipment and marine construction materials.  Some portion of Southport's work involves building and repairing bulkheads, land pilings, piers and docks, and some portion involves removing and installing mooring pilings in the water, utilizing a crane on this floating barge.  In addition, Southport owned several pieces of equipment known as "jets" that bored holes at various locations under the inland waterways in which the barge worked, using a pump on the

---

   [2] The facts set forth here are undisputed facts and other facts viewed in the light most favorable to Plaintiff.

barge that generated high pressure streams of water, so that wood pilings could be placed in those holes under the waterways.  The barge was also used to transport construction equipment from place to place on the inland waterways where the work would be performed.

    Plaintiff LaCount had been an ironworker for thirty-five years before he began working for Southport and, apart from his approximate year of service in the Navy in the 1950's, never performed any other maritime work.  LaCount became employed with Southport after responding to a newspaper ad seeking a "pile driver dock builder."  He started work on Thursday, June 3, 2004 and worked that entire day as well as Friday, June 4.  He worked again on Monday, June 7, but gave notice in the morning that it would be his last day.  Before that day ended, Plaintiff was injured, at about 3:30 P.M., while working on the barge removing and installing mooring pilings.

    At that time, the barge was in navigable waters off Brigantine, New Jersey and was engaged in removing and installing mooring pilings.  A jet was being used to shape holes at the bottom of the water.  Tom Platt, another Southport employee, was operating the barge crane to lift and move both the pilings and the jet.  Mr. LaCount and two additional Southport employees were on the barge.  LaCount's supervisor and the owner of Southport, John Birtles, asked Plaintiff to assist in handling a piling and

a jet that were hanging from the barge's crane. Birtles directed LaCount to grab the wooden piling. As the jet came out of the water, Birtles then told LaCount to hand him the piling and to take over holding the jet. Birtles lost control of the piling after he took it from Plaintiff and it accidentally swung toward LaCount, crushing his right arm between it and the jet and causing Plaintiff the injury that is the subject of this action.

**B.   Plaintiff's Claims**

Plaintiff seeks compensation under two statutory schemes: the Jones Act and the Longshore and Harbor Workers' Compensation Act ("LHWCA"). These Acts generally operate as mutually exclusive compensation regimes for different sets of injured maritime workers. Plaintiff primarily seeks Jones Act compensation but, alternatively, he seeks compensation under the LHWCA. Of course, the federal rules permit alternative pleading. Fed. R. Civ. P. 8 ("Relief in the alternative or of several different types may be demanded."). See also Southwest Marine v. Gizoni, 502 U.S. 81, 92 (1991)(plaintiffs need not elect between LHWCA and Jones Act prior to litigating "seaman" status).

The Jones Act provides an action for damages by any "seaman" injured in the course of his employment against his employer. 46 U.S.C.A. § 30104(a). The LHWCA provides compensation for injuries suffered by land-based maritime workers and excludes any "master or member of a crew of any vessel," 33 U.S.C. 902(3)(G),

that is, any "seaman" under the Jones Act, see <u>McDermott Int'l Inc. v. Wilander</u>, 498 U.S. 337, 347 (1991). Thus, if Plaintiff is a seaman and can sue under the Jones Act, then he is also a member of a crew barred from compensation under LHWCA.

LHWCA is generally a worker's compensation scheme and does not provide employees the right to sue employers in tort, but there is an exception available when the employer is also the owner of the vessel on which the employee was injured. See 33 U.S.C. § 905(b). Plaintiff argues that if he is not a seaman under the Jones Act, that he is a land-based maritime employee who can sue Southport as the owner of the barge under 33 U.S.C. § 905(b).

Because there is a genuine issue of material fact as to whether Plaintiff is a seaman or a land-based maritime employee, the Court finds it is appropriate to deny summary judgment to Defendant on both of Plaintiff's theories of recovery and permit a jury to determine Plaintiff's status.

### III. MOTION FOR SUMMARY JUDGMENT

**A. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[3] Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Further,

> the issue of seaman status is a mixed question of fact and law. Once the court defines the appropriate standard, the trier of fact must decide whether a particular employee meets that standard and is thus a seaman. "Nevertheless, 'summary judgment ... is mandated where the facts and the law will reasonably support only one conclusion.'"

---

[3] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. P'ship of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

Harbor Tug [and Barge Co. v. Papai, 520 U.S. [548, 554 (1997)].
Foulk v. Donjon Marine Co., Inc., 144 F.3d 252, 258 (3d Cir. 1998) (citations omitted).  Thus, as discussed at oral argument, "the inquiry into seaman status is of necessity fact-specific," Gizoni, 502 U.S. at 88, and not usually determined at the summary judgment stage.

**B. Jones Act Claim**

The Jones Act ("the Act") provides qualified maritime employees, seamen, an opportunity to bring personal injury actions against their employers:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.  Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C.A. § 30104(a).  "The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" Chandris, Inc. v. Latsis, 515 U.S. 347, 370 (1995) (quoting Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104 (1946)(Stone, C.J., dissenting)).

The Act does not define the term "seaman" but the Supreme Court has developed a two-part test for determining whether an employee qualifies as a seaman: (1) the worker's duties must

contribute to the function of the vessel or the accomplishment of its mission and (2) the worker must have a connection to a vessel in navigation that is substantial in duration and nature. Chandris, 515 U.S. at 376.

> The key to seaman status is employment-related connection to a vessel in navigation. [A] necessary element of the connection is that a seaman perform the work of a vessel. In this regard, ... the requirement that an employee's duties must "contribut[e] to the function of a vessel or to the accomplishment of its mission" captures well an important requirement of seaman status. It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work.

Reeves v. Mobile Dredging & Pumping Co., Inc., 26 F.3d 1247, 1251 (3d Cir. 1994).

> Under the first portion of the Chandris seaman status test, an employee must demonstrate that his or her duties "contribute to the function of the vessel or to the accomplishment of its mission." 515 U.S. at 368 (citation omitted).  In satisfying this requirement, the seaman does not have to aid the vessel in navigation, see Wilander, 498 U.S. at 353; rather, the employee must merely "perform the work of the vessel." Id. at 355.

Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 148 (3d Cir. 1998).  Defendant has not contested that this first element of the seaman requirement is met.

Rather, Defendant moves for summary judgment on the ground that Plaintiff's connection to the vessel was not substantial in

duration and nature; i.e., that the second prong of the <u>Chandris</u> test has not been met.

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

<u>Chandris</u>, 515 U.S. at 368.  Defendant argues that Plaintiff's connection to the barge was not substantial because he spent less than 30% of the time he was employed by Southport aboard the vessel and that he had no "maritime" duties with regard to the vessel.  Defendant cites the Supreme Court's adoption of the 30% figure in <u>Chandris</u>, where the Court said that it was "an appropriate rule of thumb for the ordinary case."  <u>Chandris</u>, 515 U.S. at 371.

> A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.

<u>Id.</u>

Plaintiff opposes the motion for summary judgment, arguing that 30% is not an absolute cut-off and that he has presented evidence from which a reasonable jury could find that his

connection to the vessel was substantial in duration and nature. Plaintiff testified at his deposition that he worked on the vessel each of the three days he worked for Southport and another employee testified the vessel was "always in use." Plaintiff also testified that on the day of his injury, which occurred around 3:30 P.M., he had been on the barge since work began at 7 A.M.  Further, Plaintiff and other employees testified that his duties included "securing the pushboat to the barge, securing the barge in place with lines or placements of spuds, securing the jet and pilings to the crane, handling the jet and pilings and operating the compressor."  (Pl. Br. at 18).  Plaintiff argues that a reasonable juror could find that such duties were substantially connected to the barge Southport employed him to work on; and that, therefore, his work for the vessel was substantial in duration and nature.

The Court cannot say as a matter of law that Plaintiff's connection was insubstantial in nature.  However, the duration issue is a closer call.  Plaintiff worked on or for the barge for only three days.  He did not spend the full day on the barge during his first two days of work, instead working at least part of one day on land and part of one day on a floating dock.  In addition, on the morning before his injury, Plaintiff informed Southport that it was his last day of work.  Thus, he had no intention at the time of his injury to maintain a substantial

10

temporal connection to the vessel – nor had he been working there for a substantial amount of time.  Defendant argues, therefore, that the Court should find the employment temporally insignificant.

However, the Court must look at the *proportion* of time Plaintiff spent working in service of the vessel during the period Plaintiff was employed, not the total amount of time he spent on the vessel.  Chandris, 515 U.S. at 372.  While "[a] maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not [a seaman], regardless of what his duties are [,] substantiality in this context is determined by the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure."  Id.  Under this formulation, a short period of employment could qualify as substantial in duration if the employee spent a high proportion of that time on the vessel.[4]

---

[4] The Chandris Court went on to explain that the employment relationship should be viewed as a whole:

> In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ "a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." [Easley v. Southern Shipbuilding Corp., 965 F.2d 1, 5 (5th Cir. 1992), cert. denied, 506 U.S. 1050(1993).]

11

The Third Circuit has put a gloss on the durational inquiry: if the employment was *intended* to be of very short duration, that fact is relevant to whether the relationship is "substantial" in duration.  "Under the 'no snapshot' doctrine, articulated in Chandris, a court does not evaluate a worker's connection to a vessel or fleet at the moment of injury.  Instead, the court must consider his **intended** relationship, as if he had completed his mission uninjured."  Foulk, 144 F.3d at 259 (emphasis added)(finding that intended employment period of ten days was not insubstantial as matter of law).  Thus, according to Foulk, it is not the actual duration of employment but the intended duration of employment that determines its substantiality.

In this case, there is a dispute of highly material fact as to whether, when Plaintiff was hired, the employment was undertaken for a temporary or an indefinite time period. Defendant notes that Plaintiff quit on his third day of work. However, to find for Defendant, a jury would have to infer from that fact that when he started work Plaintiff did not intend for the employment to be of a significant duration.  This Court cannot draw such an inference at this stage; on the contrary, all

---

> Thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured.

Chandris, Inc. v. Latsis, 515 U.S. 347, 363 (1995).

reasonable inferences must be drawn in favor of Plaintiff, as the party opposing summary judgment, and the fact that Plaintiff quit early in his employment is equally consistent with an inference that he intended to work there for a long time when he accepted the position, that his employment was full-time, but that he later found the job was not to his liking.  Therefore, the Court can not grant summary judgment merely because Plaintiff quit on his third day.

Courts have counseled that the substantiality of the employment relationship should be measured according to the "totality of the circumstances," that is, looking simultaneously at the nature and the duration of employment.  <u>Foulk</u>, 144 F.3d at 259.  "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." <u>Chandris</u>, 515 U.S. at 370.[5]

> The ultimate inquiry is "whether the worker
> in question is a member of the vessel's crew
> or simply a land-based employee who happens
> to be working on the vessel at a given time,"

---

[5] "Nevertheless," the Supreme Court said, "we think it is important that a seaman's connection to a vessel in fact be substantial in both [duration and nature]." <u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347, 371 (1995).

> id. at 370, 115 S.Ct. at 2191, and the two-part test is merely an aid in making that determination. So while the Court did explain that both the duration and the nature of the connections be "substantial," id., the inquiry is one in the totality of circumstances. Id. at 368-70, 115 S.Ct. at 2190. It is inappropriate to attempt to determine the minimum durational element by an absolute number, such as 10 days.
>
> Furthermore, this reasoning is consistent with this court's holding that "lack of long-continued [durational] attachment to a vessel cannot, as a matter of law, serve to deny [Jones Act] seaman status to an employee who is injured while assigned to and performing normal crew service." Reeves v. Mobile Dredging & Pumping Co. Inc., 26 F.3d 1247, 1252 (3d Cir.1994) citing with approval Latsis v. Chandris, Inc., 20 F.3d 45 (2d Cir. 1994) aff'd 515 U.S. 347.

Foulk, 144 F.3d at 259. Looking at the totality of Plaintiff's employment with Southport, a reasonable jury could find Plaintiff to be a member of the barge's crew with more than a fleeting connection to it and, therefore, a seaman under the Jones Act.

Further, it seems inequitable to deny Plaintiff seaman status merely because he gave notice of his intent to leave Defendant's employ. The proper inquiry seems to be: what did the parties intend when Plaintiff began his employment? See Foulk, 144 F.3d at 259. That intention defines the nature of the employment more than the subsequent decision to quit defines it.[6]

---

[6] In addition, looking at Plaintiff's intention solely at the time of the injury may run afoul of courts' admonitions not to take a "snapshot" of a plaintiff's status at the time of the injury when determining whether the plaintiff qualifies as a

14

Because there is a material dispute about that intention, the Court shall not grant summary judgment on the Jones Act claim. A reasonable jury could find that his relationship with the barge was substantial in duration and nature and Defendant does not contest the applicability of the other Jones Act requirements.

### C. Whether LaCount May Sue Southport as the Vessel Owner Under LHWCA 905(b)

Alternatively, Plaintiff seeks recovery under the vessel-owner liability provision of the Longshore and Harbor Workers' Compensation Act, which, in relevant part, provides the opportunity for personal injury actions by non-seamen against vessels, that is against their owners and operators:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person. . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . .The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

33 U.S.C. § 905(b).

---

"seaman."  See Chandris, 515 U.S. at 363.

Southport does not contest that this section of the LHWCA creates a right for certain employees to sue their employers in their capacities as vessel owners when the employees can prove that the employers' relevant negligence caused the injuries at issue, notwithstanding the LHWCA's general prohibition on employer liability for personal injury.  See, e.g., Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31 (3d Cir. 1975), cert. denied, 423 U.S. 1054 (1976).  Nor does Southport contest that for purposes of this Act, it is the "vessel" potentially liable under this provision.[7]

Rather, Southport argues that it can be liable as the "vessel" or vessel owner only for injuries caused by a condition of the vessel or the negligence of separate maritime agents acting specifically for the vessel.  Further, Southport claims, LaCount has come forward with no evidence that the barge was unseaworthy or that the barge or its crew caused his injuries.

---

[7] For purposes of the LHWCA, 33 U.S.C. § 902(21) defines "vessel" to include the operator of this barge:

> Unless the context requires otherwise, the term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

16

The Third Circuit has rejected Southport's narrow construction of what activities may render an employer/vessel owner liable in negligence as an owner under 33 U.S.C. § 905(b). As long as the injury did not involve stevedoring[8], as this case does not, the Third Circuit says the Court need not examine the nature of the work in which a plaintiff's allegedly negligent coworker was engaged at the time that coworker caused the subject injury.  "The vessel, even a vessel which is an employer under the Act, is relieved of liability for negligence of persons engaged in providing stevedoring services, but is not relieved of liability for its own 'owner' occasioned negligence."  Griffith, 521 F.2d at 43.  As the Third Circuit has said, "no construction [of 905(b)] appears open which would shield [the employer] from liability as a *pro hac vice* owner for the negligence of employees engaged in services in connection with the barge other than stevedoring."  Id. at 44.  Plaintiff has testified that his coworkers were conducting services in connection with the barge when they were operating the crane and helping drive moorings into the water.

Furthermore, in this case, Plaintiff has alleged and provided testimonial evidence that the barge's crane was not functioning properly at the time of the accident and that such

---

[8]  A "stevedore" is: "A person or company that hires longshore and harbor workers to load and unload ships."  Black's Law Dictionary (8th ed. 2004).

17

malfunction caused his injuries.  In addition, Defendant permitted an unlicensed crane operator to operate the barge's crane and failed to warn LaCount of the dangers inherent in working on that barge with that equipment.  Such facts, if found by a jury, are sufficient to permit a jury to find a lack of the vessel owner/operator's due care under the circumstances and, therefore, the Court should deny summary judgment.

In Griffith, the Third Circuit declined to decide exactly how to describe the standard of care a vessel owes to longshoremen[9] under the Act.  521 F.2d at 44-45.  Nevertheless, drawing on case law in other Circuits, Plaintiff alleges that a vessel has at least three duties to the workers going on it:

> (1) A duty to turn over the vessel, its equipment and appliances in such condition that an expert contractor, mindful of the dangers one might encounter, will be able to carry on its operations with reasonable safety.  This includes a duty to warn of the hazards on the ship or with respect to its equipment that are known to the vessel owner or should be known to it in the exercise of reasonable care and would likely be encountered by the workers but are not obvious;
>
> (2) A duty, once work has begun, to prevent injuries in areas of the vessel that remain under the owner's active control; and
>
> (3) A limited duty to intervene.

---

[9] This term generally refers to workers hired to load and unload cargo on vessels.  See Black's Law Dictionary (8th ed. 2004), longshoreman: "A maritime laborer who works on the wharves in a port; esp., a person who loads and unloads ships."

<u>See</u> (Pl.'s Br. at 25-28.)  Because these duties were developed in cases about vessel owners' obligations to longshoremen that did not involve dual capacity owner/employers, the standards are slightly off point here, where the plaintiff was not involved in cargo loading and the employer is also the statutory "owner" of the vessel.

However, "negligence" standards always require reasonable care under the circumstances and the statute precludes liability to employers qua employers; therefore, the Court shall simply look at whether Plaintiff has provided evidence that Southport, in its capacities as the vessel owner or operator, failed to use reasonable care.  Plaintiff's allegation and deposition testimony that Southport failed to maintain the crane in safe working condition and to adequately warn the workers of its deficiencies suffice at this stage.  In addition, Plaintiff has testified that his coworkers who contributed to his injuries were negligently doing the vessel's work at that time.

**IV. CONCLUSION**

For the foregoing reasons, the Court shall deny the motion for summary judgment in its entirety.  An accompanying Order shall be entered.

**June 29, 2007**                                             **s/ Jerome B. Simandle**
Date                                                          Jerome B. Simandle
                                                              U.S. District Judge